**Opinion filed August 25, 2016**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00244-CV

_____

## TEDDY BURT, Appellant

## V.

## SARAH FRANCIS, Appellee

**On Appeal from the 266th District Court**

**Erath County, Texas**

**Trial Court Cause No. CV 32435**

### O P I N I O N

This is an appeal from a protective order granted by the trial court against Appellant, Teddy Burt. In a single issue, Appellant challenges the legal sufficiency of the evidence to support the grant of the protective order. Specifically, Appellant challenges the trial court's determination "that family violence has occurred." *See* TEX. FAM. CODE ANN. §§ 81.001, 85.001(a)(1) (West 2014). We affirm.

*Background Facts*

On May 29, 2014, the trial court entered an agreed final decree of divorce dissolving the marriage between Appellant and Appellee, Sarah Francis. Despite the agreed nature of the divorce decree, the dealings between Appellant and Appellee were quite acrimonious, particularly with respect to their three children. Appellee testified that Appellant was required to exercise his overnight possession of the children at his mother's house. She further testified that her concerns about Appellant's behavior had intensified after the divorce because his behavior had worsened.

Appellee testified that when Appellant came to pick up their children for the weekend on May 30, 2014, he became irate. She stated that "he was very angry, he was smacking his fists, yelling." Appellee was very concerned about Appellant's ability to drive safely because of his anger, and she contacted the sheriff's office because of her concern. That same evening, Appellant returned the children to Appellee. However, an argument ensued between Appellant and Appellee. Appellee testified that Appellant pulled their three-year-old child out of her arms and that he woke up their eight-year-old and left with the children. Appellee contacted the sheriff's office again to report Appellant's conduct.

Appellee testified that Appellant subsequently communicated various threats to his children, including that he was never going to see them again, that they needed to tell Appellee and the court that they wanted to live with him, that Appellee was an evil person, and that his mother was a bad person. Appellee stated that Appellant engaged in "a lot of angry . . . talk" to their ten-year-old son that caused him to cry and be upset. Appellee testified that on June 30, 2014, Appellant showed up at her house, stood at the doorway, and berated their son and daughter. She stated that he proclaimed that she and her mother were evil and that the children should have nothing to do with them. Appellee asked Appellant to leave multiple times, but he

2

refused. When Appellee shut the door, Appellant continued to stand at the door telling his son that he could still see him through the door. Appellee testified that her son was shaking, fearful, and tearful as a result of this incident.

On another occasion, Appellant shot a handgun at Appellee's house when picking up the children. He shot the gun for the purpose of showing the children a new gun that he had acquired. Appellee testified that their children were "angry and stressed out pretty much all the time" as a result of Appellant's conduct. She stated that her son had trouble sleeping and that he told her that he felt worthless and "that he thinks he should die."

Appellee testified that the children were fearful of Appellant. When asked if Appellant's conduct was physically threatening, Appellee responded as follows:

> Yes, he looms over us and stands in our face, he flexes his muscles, he slams his fists, he yells, he gets really, really close when he's doing this, he uses a lot of foul language, and he -- he rev his car engine in the driveway as he goes by the house --huh-- and those are the kinds of things he does to be intimidating and oppressive.

On July 16, 2014, Appellee filed an application for a protective order and a petition to modify the parent–child relationship. She supported the application for the protective order with her own affidavit and an affidavit from Appellant's mother. The trial court entered a temporary restraining order the next day that precluded Appellant from having possession of or access to the children pending further order of the court. The trial court heard the application and motion to modify on August 5, 2014. Appellee testified that the children were a "lot happier and calmer" during that period that the temporary restraining order was in effect.

On cross-examination, Appellee stated that Appellant had not been "physical" toward her or the children. However, she testified that Appellant was intimidating with his posture, that his irrational and violent behavior had escalated after the divorce, and that she and the children were frightened by him.

Appellant's mother testified on behalf of Appellee in support of the application for a protective order. She described the interaction between Appellant and his children in the following manner: "There's been several angry outbursts, where he's in their faces ranting and raving that they tell the truth, if it hadn't -- if they'd tell the truth that things would be different, and right in their faces pounding his fists and . . . yelling." Appellant's mother testified that Appellant's son receives the brunt of Appellant's verbal abuse and that he reacts to it by shaking and crying. She stated that Appellant's conduct has "really traumatized" his son and that she was there to testify on behalf of Appellee because her grandson asked her to do so.

Appellant also testified at the hearing. He testified that he is an emotional and passionate person but that he does not feel like he is yelling when talking to people. With respect to talking to his son, Appellant testified that he is "actually preaching to him." When asked if he called Appellee a liar in front of the children, Appellant stated: "Like I said, I tell them about the Bible, if the shoe fits, wear it." He denied ever trying to physically hurt Appellee or the children.

*Analysis*

We note at the outset that the trial court announced its ruling granting the application for a protective order at the conclusion of the hearing on August 5, 2014, and it entered a written protective order on that date. By its express terms, the protective order remained in effect until August 5, 2016. *See* TEX. FAM. CODE ANN. § 85.025(a) (West Supp. 2016). Ordinarily, the expiration of an order would render a case moot and thus unreviewable. *See Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988). However, Texas law recognizes a "collateral consequences" exception to the mootness doctrine. *Fed. Deposit Ins. Corp. v. Nueces Cty.*, 886 S.W.2d 766, 767 (Tex. 1994); *State for the Protection of Cockerham v. Cockerham*, 218 S.W.3d 298, 302 (Tex. App.—Texarkana 2007, no pet.). Texas courts have routinely applied the collateral consequences exception to

4

an expired protective order issued for family violence because of the stigma and attendant legal consequences to being the subject of such a protective order. *Clements v. Haskovec*, 251 S.W.3d 79, 84 (Tex. App.—Corpus Christi 2008, no pet.); *Schaban–Maurer v. Maurer–Schaban*, 238 S.W.3d 815, 822–23 (Tex. App.—Fort Worth 2007, no pet.), *disapproved of on other grounds by Iliff v. Iliff*, 339 S.W.3d 74 (Tex. 2011); *Cockerham*, 218 S.W.3d at 302. Under the collateral consequences exception, the expiration of the protective order in this case does not render Appellant's appeal from the protective order moot. *See Clements*, 251 S.W.3d at 83–84; *Schaban-Maurer*, 238 S.W.3d at 823; *Cockerham*, 218 S.W.3d at 304. We will therefore review the merits of Appellant's challenge to the protective order.

In his sole issue, Appellant challenges the legal sufficiency of the evidence to support the trial court's finding that family violence had occurred. The intermediate courts of appeals disagree as to the standard of review to be applied when reviewing the sufficiency of the evidence to support the issuance of a protective order. *See St. Germain v. St. Germain*, No. 14-14-00341-CV, 2015 WL 4930588, at *2 n.1 (Tex. App.—Houston [14th Dist.] Aug. 18, 2015, no pet.) (mem. op.). *Compare In re Epperson*, 213 S.W.3d 541, 542 (Tex. App.—Texarkana 2007, no pet.) (applying abuse of discretion standard of review because protective order provides injunctive relief), *with Ulmer v. Ulmer*, 130 S.W.3d 294, 296–97, 299–300 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (recognizing that protective order provides injunctive relief but applying the legal and factual sufficiency standard of review). We will review Appellant's legal sufficiency challenge under the traditional standard of review for legal sufficiency challenges. *See In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000) (applying the legal and factual sufficiency standard in a case under Section 33.004(i) of the Family Code because the statute provided that court "shall" enter an order if the minor is "mature and sufficiently well informed");

*Vongontard v. Tippit*, 137 S.W.3d 109, 112 (Tex. App.—Houston [1st Dist.] 2004, no pet.). In a legal sufficiency challenge, we view the evidence in the light most favorable to the judgment and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 807, 827. If there is any evidence of probative force to support the finding, we will overrule the issue. *See Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005).

A court shall render a protective order if the court finds that family violence (1) has occurred and (2) is likely to occur in the future. FAM. §§ 81.001, 85.001. "Family violence" is defined, in pertinent part, as:

> [A]n act by a member of a family . . . against another member of the family . . . that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

FAM. § 71.004(1). Thus, a family member's actions can meet the definition if they are intended to result in harm or involve a threat that reasonably places the other family member in fear of imminent harm. *Boyd v. Palmore*, 425 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "Given the remedial nature of [the Family Code's protective order provisions], courts should broadly construe its provisions so as to effectuate its humanitarian and preventative purposes." *Id.*

Appellant contends that there is no evidence that he committed physical violence in the past or that he made a threat that reasonably placed a member of the family in fear of imminent physical harm, bodily injury, or assault. We disagree. Threats that reasonably place the victim in fear of imminent harm constitute family violence. *See, e.g.*, *Boyd*, 425 S.W.3d at 430–31 (concluding that appellant committed act of family violence when he blocked appellee's car with his body and

6

jumped on hood of car); *Clements*, 251 S.W.3d at 85–86 (concluding that appellant committed act of family violence by raising his fist and making other threats though he never actually struck a family member). Even in circumstances where no express threats are conveyed, the factfinder may nonetheless conclude that an individual was reasonably placed in fear. *Wilmeth v. State*, 808 S.W.2d 703, 706 (Tex. App.—Tyler 1991, no pet.) (noting that even without verbal threats, a reasonable person may be placed in fear by a menacing glance and hand gesture).

Appellee testified that Appellant's violent conduct escalated after their divorce to the point that she and her children were fearful of him. She attributed this fearfulness to his intimidating posture when yelling at her and the children. Her son reacted to Appellant's conduct by being so physically disturbed by it that he was trembling and crying. Viewing the evidence in the light most favorable to the trial court's judgment, we conclude that there is evidence of probative force to support the trial court's determination that family violence occurred. The trial court reasonably could have concluded that Appellee and her children reasonably feared imminent physical harm as a result of Appellant's threats, violent gestures, and escalating conduct. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the order of the trial court.


JOHN M. BAILEY

JUSTICE


August 25, 2016

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

7