**Opinion filed May 19, 2022**



## In The

# Eleventh Court of Appeals

_____

## No. 11-20-00162-CV

_____

## ASCENCION CHON VIDAL AND ADRIANNA PEREZ VIDAL, Appellants

## V.

## REBECCA PEDROZA ANDERSON, Appellee

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 19-13980N**

## M E M O R A N D U M   O P I N I O N

This is an appeal from a lifetime family-violence protective order entered in favor of Appellee, Rebecca Pedroza Anderson. In the final protective order, the trial court found that Appellants, Ascension Chon Vidal (Chon) and Adrianna Perez Vidal (Adrianna), had committed acts of family violence and were likely to do so in the

future.  Additionally, the trial court specifically found that Appellants had caused serious bodily injury to A.V. and C.V.,[1] the two children protected under the order.

Appellants present three issues on appeal.  First, Appellants challenge the legal and factual sufficiency of the evidence to support the trial court's grant of the family-violence protective order.  Second, Appellants challenge the legal and factual sufficiency of the evidence to support the duration of the protective order.  Third, Appellants contend that the lifetime protective order constitutes a termination of Chon's parental rights without judicial review and violates Appellants' due process rights.  We affirm in part and reverse and remand in part.

## I. *Factual and Procedural Background*

Appellee and Chon are joint managing conservators of their two children, A.V. and C.V.  A.V. is a disabled child who suffers from Rett Syndrome, a rare neurological disorder that leads to severe impairments.  When this case was filed, A.V. was nine years old and C.V. was ten.  Prior to the entry of the protective order, the children had resided with their father and stepmother, Chon and Adrianna, since 2016.  Appellee has had standard possession visitation since 2017.

In October of 2019, Appellee noticed a piece of duct tape in one of the children's bedrooms at Appellants' house.  Appellee was concerned that Appellants were using duct tape to bind the children's hands; however, she did not attempt to speak to Appellants about it "due to the fact it was something that [C.V.] had said and [Appellee] didn't want [C.V.] to get in trouble."

On November 4, 2019, Appellee and her husband, Jeron Anderson, traveled to Fort Worth with Adrianna for A.V.'s geneticist appointment.  Appellee and Jeron arrived at Appellants' house around 7:00 that morning to make the drive from

---

[1]Both children protected under the order have the same initials.  Because the son is referred to by his middle name throughout the record, we have referred to him as "C.V." and to the daughter as "A.V." in this opinion.

Colorado City, Texas. Adrianna had just woken up when she answered the door. Appellee smelled marihuana immediately upon entering Appellants' house. Inside the house, there was "food, cigarettes, and an empty cigarette pack on the table where the kids eat. There was food all on the counters in the kitchen. [A.V.] was sleeping in one of the boys' rooms because [A.V.'s] room had a pile of clothes on it." While Adrianna was getting ready, Appellee and Jeron also "noticed that there was a roach, a blunt on the couch with a lighter."

Appellee went into the room where A.V. had slept to get her ready for the appointment and found A.V. "soaking with pee" from wetting the bed. Appellee took A.V. into the living room, and Adrianna gave Appellee some of A.V.'s clothes to put on her. After A.V. was dressed, Adrianna retrieved "a roach off the couch, lit it up and smoked and blew it in [A.V.'s] mouth." Jeron recorded a video of Adrianna blowing the smoke into A.V.'s mouth.

On November 22, 2019, after Appellee picked up A.V. and C.V. for the weekend, she noticed that A.V. "had bruises all over her body." Appellants' explanation for A.V.'s bruises was that A.V. had fallen off their bed. Additionally, Appellee noticed a burn mark on A.V.'s wrist. Appellee was concerned that Chon and Adrianna had affixed duct tape to the children's hands and wrists as a form of punishment because she had noticed "spots of duct tape" on them in the past.

On December 3, 2019, Appellee filed an application for a protective order, alleging that Appellants had engaged in conduct that constitutes family violence, namely acts of assault and other forms of abuse that were intended to result in physical and emotional harm and injury to the children. Appellee requested that the duration of the protective order exceed two years on the grounds that Appellants "committed an act constituting a felony offense involving family violence against [C.V. and A.V.]." Specifically, Appellee asserted that Appellants had engaged in conduct that constituted the felony offenses of (1) child endangerment, (2) injury to

a child, and (3) injury to a disabled person. *See* TEX. PENAL CODE ANN. §§ 22.04(a), .041(c) (West Supp. 2021). Appellee additionally requested a temporary ex parte order, which the trial court granted. The trial court twice extended the temporary ex parte protective order in advance of the hearing on Appellee's application.

A. *The Hearing*

On January 6, 2020, the trial court proceeded with the hearing on Appellee's application for a protective order. Testimony from Appellee and two investigators with the Department of Family and Protective Services (DFPS), Amy King and Laura Silva, was presented that day.

Silva was the primary DFPS investigator in this case. Silva had served as the investigator in two, out of at least ten, prior DFPS cases involving Appellants and had been to their house on several occasions. In March of 2019, Silva was the caseworker during a DFPS investigation into allegations raised against Appellants for physical neglect and possible drug use. At the hearing, Silva stated that DFPS's present concerns were allegations of drug use. Because of this, Silva asked Appellants to submit to hair follicle testing in mid-December.

Silva testified that the result from Chon's drug test was concerning to DFPS; however, Silva stated that "there may have been a mixup with [Appellants'] drug tests, their specimens." At that time, Adrianna had submitted to additional drug tests, but Chon had not. Silva explained that they were unable to find hair on Chon for additional drug testing. With respect to the children, Silva testified that the drugs that DFPS was concerned about were "[m]ethamphetamines and amphetamines."

Because of DFPS's concerns about physical abuse, Silva testified that DFPS planned to look further into "[A.V.'s] syndrome, the Rett Syndrome." She explained: "We do initially plan on sending those medical records to what we call our face meeting, our forensic medical review people so that they can review the injuries. We explain what her syndrome is, what she has and they let us know if these injuries are

4

consistent to regular care or abuse." In response to questioning by Appellants' trial counsel, Silva testified that, based on the DFPS investigation, Appellee could not have injured A.V. and C.V.

Appellee testified that she was afraid of Appellants. She testified that, on December 3, after the trial court granted the ex parte protective order, Adrianna threatened "to whoop [Appellee's] ass" and told Appellee that "[Appellee] wasn't going to take [Adrianna's] daughter." That night, when she was drying A.V. after a bath, Appellee noticed that A.V. had "a tear" located "[d]own at the bottom of [A.V.'s] vaginal area," which "was bleeding," and that A.V. had a visible "piece of skin that was like flopped over that was torn off." Appellee subsequently called the DFPS caseworker and then took A.V. to the hospital.

Amy King, a child protective investigator with DFPS, met with Appellee and the children during A.V.'s hospital visit that night. King testified that she was concerned after viewing A.V.'s body: "She had bruises on her legs, her thighs, her back, her chest. She had one on her arm and then one on the side of her neck." The bruises on A.V.'s body were "pretty much spread out." According to King, A.V. seemed abnormally small for a child of her age, but King expressed uncertainty as to how A.V.'s size would "compare to other children with the same disabilities." King stated that DFPS's concerns at the time were "[d]rug use and physical abuse." Because King was aware of Appellee's past drug history, she requested a drug screen from Appellee.

Chon testified that it had been over three years since he last used methamphetamine. He stated that there was no one else living at his home, other than Adrianna and himself, who could have caused the children to be exposed to methamphetamines. With respect to the video of Adrianna exhaling smoke into A.V.'s mouth, Chon testified that Adrianna was administering A.V.'s "medicine," which was CBD. Chon and Adrianna had begun administering CBD to A.V. several

5

months after Appellee left the children in Chon's care. Chon also denied taping the children's hands with duct tape.

On February 10, 2020, the trial court resumed the hearing on Appellee's application for a protective order. Evidence of the drug test results for Chon, Adrianna, A.V., C.V., Appellee, and Jeron were admitted, along with A.V.'s medical records. The individual drug tests revealed the following:

- Chon was positive for methamphetamine;
- Adrianna was positive for amphetamine, methamphetamine, and marihuana;
- A.V. was positive for methamphetamine;
- C.V. was positive for methamphetamine;
- Appellee was negative; and
- Jeron was negative.

Chon maintained that he had not used methamphetamine in three years. As far as the children's positive results, Chon testified that a woman named Patricia Miles, a neighbor who had helped Appellants with the children in the past, might have exposed the children to methamphetamine. Evidence was presented that Miles's husband had been arrested for drugs in late November of 2019. Additionally, Chon denied that A.V. had any bruising on her when Appellee picked her up on December 3 and stated that Appellee must have caused the bruises on A.V. in the hours before Appellee took A.V. to the hospital.

Adrianna testified similarly as to the children's exposure to methamphetamine and the bruising on A.V. Adrianna explained that the children take Albuterol and Flovent for asthma and that, according to her research, those medications can cause a false positive result for methamphetamine.

Jennifer Jones, an LVN at Mitchell County Hospital, was the nurse for A.V.'s doctor. Jones testified that she had never suspected A.V. of being abused or

neglected by Appellants. According to Jones, A.V.'s weight had never been a concern and A.V. was usually happy with Appellants.

LaDonna Towery, A.V.'s aide from preschool through second grade at Colorado Elementary school, testified that Appellants and Appellee were involved with A.V. at the school. Towery understood that A.V. would accidentally scratch herself due to Rett Syndrome, and she believed that A.V. was adequately cared for by Appellants. On cross-examination, Towery explained that it had been two years since she was A.V.'s aide at school and that the only type of "contact" that she had with A.V. "was just being able to see how [A.V.] was doing on Facebook and stuff."

Tammy Copeland was hired by the Loraine Independent School District in November of 2018. The district hired Copeland to serve as A.V.'s aide at school. On December 2, 2019, A.V.'s last day at that school, Copeland saw that A.V. had "some bruising on her." Copeland stated that A.V. bruised "very easily" and the types of bruises that she normally saw on A.V. were "[m]aybe where [A.V.] crawled" and "[m]aybe where at home [A.V.'s] brothers were playing with her." When asked whether she ever saw any bruising on A.V. that caused her concern, Copeland answered in the affirmative. Not long before A.V.'s last day at the school, Copeland informed the school nurse about bruising that she had noticed on A.V. Copeland testified that the nurse "possibly made a call" to CPS but that Copeland never spoke with CPS as a result of that. Further, Copeland never personally called CPS with respect to A.V.

Copeland testified that A.V. would occasionally smell bad when Appellants dropped her off at school. There were times when Appellants would inform Copeland that they had not changed A.V.'s diaper when they dropped A.V. off at school. Copeland changed A.V.'s diaper twice a day at school. Copeland testified that there were "a couple" of times when she noticed "some red spots" in A.V.'s diaper. Copeland informed the nurse about the bleeding. According to Copeland,

Chon told her and the nurse that he "thought that she had maybe started her menstrual period."

Chon's former boss at Stripes, William Miller, also testified at the hearing. Miller had known Appellants for almost five years and was a frequent visitor to their home. Miller testified that he would be surprised if A.V. were covered in bruises because he had "never seen that child with an injury." Miller likewise testified that he had never seen drugs at Appellants' home. When questioned by Appellee's trial counsel in regard to Chon's drug history, Miller testified that he did not know Chon in 2017.

B. *The Protective Order*

After considering the evidence, the trial court granted Appellee's application for a family-violence protective order. In its final protective order, the trial court found that family violence had occurred in the past and was likely to occur in the future "based on the facts of the case." *See* TEX. FAM. CODE ANN. §§ 81.001, 85.001(a) (West 2019). Because the trial court also specifically found that Appellants had caused "*serious bodily injury*" to A.V. and C.V., it determined that the protective order should "continue in full force and effect for the lifetime of [A.V.] or until [C.V.] attains the age of eighteen (18) years, whichever is later." *See* FAM. §§ 85.001(d), .025(a-1)(2).

II. *Legal and Factual Sufficiency*

Appellants' first and second issues on appeal concern the legal and factual sufficiency of the evidence to support (1) the trial court's grant of the family-violence protective order and (2) the duration of the protective order, respectively.

A. *Standards of Review*

When we review a trial court's factual determinations, we apply the same standards of review that we use in reviewing the evidence in support of a jury's findings. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000) ("When the trial court acts

primarily as a factfinder, appellate courts normally review its determinations under the legal and factual sufficiency standards." (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994))); *see also Burt v. Francis*, 528 S.W.3d 549, 553 (Tex. App.—Eastland 2016, no pet.).

### 1. *Legal Sufficiency*

In a challenge to the legal sufficiency of the evidence to support the factfinder's determination of an issue on which the appellant did not have the burden of proof at trial, we apply the no-evidence standard. *Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014) ("When a party attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate on appeal that no evidence supports the adverse finding." (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983))). We consider the evidence in the light most favorable to the judgment and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We will sustain a no-evidence challenge if the record shows that (a) there is no evidence to support the challenged element; (b) the evidence offered to prove a vital fact is no more than a scintilla; (c) the evidence establishes the opposite of the challenged element; or (d) the court is barred by law or the rules of evidence from considering the only evidence offered to prove the challenged element. *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 736 (Tex. 2018); *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 613 (Tex. 2016). Further, we must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 827; *accord Peña*, 442 S.W.3d at 263.

### 2. *Factual Sufficiency*

In a challenge to the factual sufficiency of the evidence to support an issue on which the appellant did not have the burden of proof at trial, we apply the

insufficient-evidence standard. *Croucher*, 660 S.W.2d at 58. Under that standard, we must consider the entire record—including the evidence in favor of, and contrary to, the challenged finding—to determine whether the evidence supporting the finding is so weak or the finding is so contrary to the overwhelming weight of the evidence that the finding should be set aside. *Crosstex N. Tex. Pipeline, L.P.*, 505 S.W.3d at 615; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

B. *Analysis – Issuance of Protective Order*

In their first issue, Appellants contend that the evidence is both legally and factually insufficient to support the trial court's grant of the family-violence protective order.

"A court shall render a protective order . . . if the court finds that *family violence* has occurred and is likely to occur in the future." FAM. § 81.001 (emphasis added); *see also id.* § 85.001(a)(1)–(2). "Family violence," in relevant part, means:

> (1) an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself; [or]

> (2) abuse . . . by a member of a family or household toward a child of the family or household.

*Id.* § 71.004(1)–(2); *see id.* § 261.001(1) (West Supp. 2021). "Abuse," in relevant part, includes the following acts or omissions:

> (C) physical injury that results in substantial harm to the child, or the genuine threat of substantial harm from physical injury to the child, including an injury that is at variance with the history or explanation given and excluding an accident or reasonable discipline by a parent, guardian, or managing or possessory conservator that does not expose the child to a substantial risk of harm;

(D) failure to make a reasonable effort to prevent an action by another person that results in physical injury that results in substantial harm to the child;

(E) sexual conduct harmful to a child's mental, emotional, or physical welfare, including conduct that constitutes the offense of continuous sexual abuse of young child or disabled individual under Section 21.02, Penal Code, indecency with a child under Section 21.11, Penal Code, sexual assault under Section 22.011, Penal Code, or aggravated sexual assault under Section 22.021, Penal Code; [or]

(I) the current use by a person of a controlled substance as defined by Chapter 481, Health and Safety Code, in a manner or to the extent that the use results in physical, mental, or emotional injury to a child.

*Id.* § 261.001(1)(C), (D), (E), (I).

### 1. *Legal Sufficiency – Family Violence*

We first address Appellants' contention that the evidence is legally insufficient to show that Chon and Adrianna committed acts of family violence against A.V. and C.V. and that Chon and Adrianna were likely to commit acts of family violence in the future.

As we have said, to be entitled to a family-violence protective order under the Family Code, an applicant must establish that (1) family violence has occurred and (2) family violence is likely to occur in the future. *See id.* §§ 81.001, 85.001(a)(1)–(2). If the trial court finds that the applicant has established both statutory elements, it has no discretion to deny the requested protective order. *See id.*; *see also In re Doe*, 19 S.W.3d at 253.

Here, the evidence is legally sufficient to support the trial court's grant of the family-violence protective order as to A.V. and C.V. The evidence presented to the trial court showed that A.V., C.V., Chon, and Adrianna tested positive for methamphetamine. Appellee testified that Appellants' home was a filthy and unsanitary environment, and photographs admitted into evidence confirmed Appellee's description of Appellants' house. Appellee and Jeron testified that drug

11

paraphernalia (a roach) was on the couch in Appellants' living room, and the trial court viewed the video of Adrianna blowing marihuana smoke into A.V.'s mouth. Additionally, Appellee testified that A.V. and C.V. exhibited withdrawal symptoms after they came into her care and that there was "no question" in her mind that, as shown in the video taken by Jeron, Adrianna was exposing A.V. to illegal drugs.

Furthermore, photographs admitted into evidence depicted bruises all over A.V.'s body. According to Appellee, A.V.'s vaginal area was bleeding and had a visible tear on the night that Appellee took A.V. to the hospital. Moreover, A.V.'s medical records indicated that her vaginal bleeding was caused by a suspected sexual assault.

If the record before us contains more than a scintilla of evidence to support the challenged element, the evidence is legally sufficient. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005). More than a scintilla of evidence exists if the evidence supporting the challenged finding rises to a level that would enable reasonable and fair-minded people to reach different conclusions. *See id.* Here, a reasonable and fair-minded person could logically infer from the evidence presented, namely, A.V.'s bruises, vaginal bleeding, and the presence of the same controlled substance (methamphetamine) in her hair follicle sample as was found in the Appellants' hair follicle samples, that A.V. had been the victim of family violence and that such violence was likely to occur in the future. Accordingly, we hold that the evidence is legally sufficient to support the trial court's decision to issue the family-violence protective order.

### 2. *Factual Sufficiency – Family Violence*

Appellants next contend that the evidence is factually insufficient to show that Chon and Adrianna committed acts of family violence against A.V. and C.V. and that they were likely to do so in the future. We disagree.

12

Appellants, A.V., and C.V. all tested positive for methamphetamine. Video evidence revealed Adrianna exhaling smoke into A.V.'s mouth prior to A.V.'s appointment with her geneticist. Moreover, evidence of possible sexual assault was noted along with numerous bruises that were present on A.V.'s body. On the other hand, A.V.'s Rett's Syndrome predisposes her to certain kinds of self-inflicted harm; she also bruises easily. Copeland testified that Chon had suggested that the vaginal bleeding may just be a result of A.V. menstruating. Finally, Adrianna suggested, somewhat speculatively, that the positive tests for methamphetamine resulted from the use of one of A.V.'s prescription medications. Viewing all of this evidence in a neutral light, we cannot say that the trial court's finding of family violence was so weak or contrary to the overwhelming weight of the evidence that the finding should be set aside. *See Crosstex N. Tex. Pipeline, L.P.*, 505 S.W.3d at 615. Accordingly, we conclude that the evidence is factually sufficient to support the trial court's finding that acts of family violence occurred in the past and are likely to occur in the future.

Therefore, we hold that the evidence is legally and factually sufficient to support the trial court's grant of the family-violence protective order. Accordingly, we overrule Appellants' first issue on appeal.

C. *Analysis – Duration of Protective Order*

In their second issue, Appellants contend that the evidence is both legally and factually insufficient to support the duration of the family-violence protective order.

Generally, a family-violence protective order is effective for a period not to exceed two years. *See* FAM. § 85.025(a); *see also id.* § 85.001(d). However, the trial court may render a protective order that is effective for a period that exceeds two years in duration if certain circumstances are established. *See id.* § 85.025(a-1)(1)–(3). If the trial court renders a protective order for a duration of more than two years, it must include in its order at least one of the findings described

by Section 85.025(a-1). *Id.* § 85.001(d). As such, Section 85.025(a-1) permits the rendition of a protective order that exceeds two years in duration if the trial court finds that the person who is the subject of the protective order:

> (1) committed an act constituting a felony offense involving family violence against the applicant or a member of the applicant's family or household, regardless of whether the person has been charged with or convicted of the offense;
>
> (2) caused *serious bodily injury* to the applicant or a member of the applicant's family or household; or
>
> (3) was the subject of two or more previous protective orders rendered . . . .

*Id.* § 85.025(a-1)(1)–(3) (emphasis added). Here, in its final protective order, the trial court specifically found "that [Appellants] caused *serious bodily injury* to [C.V. and A.V.]." In light of that finding, the trial court rendered the protective order for a duration of more than two years. The trial court's order further recited: "this order shall continue in full force and effect for the lifetime of [A.V.] or until [C.V.] attains the age of eighteen (18) years, whichever is later." Because the trial court's order only expressed a singular finding of "serious bodily injury" for its justification to extend the duration of the protective order beyond the general two-year term, our review is limited to addressing the legal and factual sufficiency of the evidence to support the protective order's extended duration based on the specific reason articulated by the trial court under Section 85.025(a-1)(2).

### 1. *Legal Sufficiency – Serious Bodily Injury*

We first address Appellants' contention that the evidence is legally insufficient to show that Chon and Adrianna caused *serious bodily injury* to A.V. and C.V.

As stated above, Section 85.025(a-1)(2) permits the trial court to render a protective order for a duration that exceeds two years "if the court finds that the person who is the subject of the protective order . . . caused *serious bodily injury* to

14

. . . a member of the applicant's family or household." *Id.* § 85.025(a-1)(2) (emphasis added). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." PENAL § 1.07(a)(8) (West 2021). "Serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46). In this case, Appellee presents two arguments in support of the trial court's "serious bodily injury" finding. First, Appellee contends that, due to "the horrific adverse consequences" of methamphetamine, A.V.'s and C.V.'s exposure to methamphetamine constitutes serious bodily injury. Second, Appellee argues that the sexual injury she claims that A.V. suffered should be construed as serious bodily injury.

"There are no wounds that constitute 'serious bodily injury' *per se*." *Wade v. State*, No. PD-0157-20, 2022 WL 1021056, at *6 (Tex. Crim. App. Apr. 6, 2022). Whether an injury constitutes serious bodily injury is determined on a case-by-case basis. *Id.* (citing *Moore v. State*, 739 S.W.2d 347, 349 (Tex. Crim. App. 1987)); *see also Miller v. State*, 312 S.W.3d 209, 213 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (noting the inconsistencies amongst Texas courts as to what specific facts will support a finding of serious bodily injury). Although courts have reached varying conclusions as to what constitutes serious bodily injury, it has been "long held that it is up to [the factfinder] to determine as a matter of fact whether a particular bodily injury can be said to be 'serious.'" *Wade*, 2022 WL 1021056, at *6 (citing *Davis v. State*, 199 S.W.2d 167, 168 (Tex. Crim. App. 1947); *Faulkner v. State*, 137 S.W.2d 1039, 1041 (Tex. Crim. App. 1940); *Svidlow v. State*, 236 S.W. 101, 102 (Tex. Crim. App. 1921)).

Concerning C.V., Appellants submit that "the evidence does show" the use of drugs in their home. However, Appellants assert that "the recreational use of drugs

15

in a home" does not constitute "serious bodily injury as to the children in the home." Because A.V. and C.V.'s drug test results—in addition to Appellants' drug test results—were positive for methamphetamine, we cannot agree with Appellants' assertion.

Viewing the evidence in the light most favorable to the trial court's finding—and indulging all reasonable inferences that would support that finding—we conclude that the trial court could have determined that A.V.'s and C.V.'s exposure to methamphetamine created a substantial risk of death. Therefore, because the evidence is such that reasonable and fair-minded people could reach different conclusions, we hold that more than a scintilla of evidence exists to support, on that basis, the trial court's finding that Appellants conduct caused serious bodily injury to A.V. and C.V. *See Haggar Clothing Co.*, 164 S.W.3d at 388.

2. *Factual Sufficiency – Serious Bodily Injury*

Next, we address Appellants' contention that the evidence is factually insufficient to show that Chon and Adrianna caused *serious bodily injury* to A.V. and C.V. as that term is defined. On this point, we agree with Appellants.

While we cannot conclude that the evidence is legally insufficient to support the trial court's finding that Appellants' conduct caused serious bodily injury to A.V. and C.V.—given the degree of deference demanded by that standard—we cannot avoid concluding that the evidence is factually insufficient to support that finding. We have held that the evidence is legally sufficient because, when we indulge every reasonable inference in favor of the trial court's finding, we are convinced that the trial court could have found that exposing children to methamphetamine is a circumstance that carries with it a substantial risk of death. However, this reasonable inference cannot, without more, carry the day when we are required to consider whether factually sufficient evidence supports the trial court's finding of serious

bodily injury. As we have said, there is more than a scintilla of evidence to support the trial court's finding, *but only just more than a scintilla*.

Here, the result is different when we determine whether the evidence in support of the trial court's finding, in light of the standard that we must follow, is factually sufficient. Appellee argues that the evidence presented to the trial court is indicative of the manner in which serious bodily injury is inflicted upon another and urges that we should "construe" it as such. We disagree. The contentions of serious bodily injury advanced by Appellee, i.e., drug exposure and allegations of possible sexual assault, are merely speculative suggestions that have minimal, if any, support in the record. In fact, the evidence before us that A.V. and C.V. suffered "serious bodily injury" as a result of Appellants' conduct under any of the theories encompassed by that term's definition is, at best, slight and is factually insufficient to support the trial court's finding. PENAL § 1.07(a)(46). Therefore, because the evidence in support of the trial court's "serious bodily injury" finding is factually insufficient,[2] this finding must be set aside. *Crosstex N. Tex. Pipeline, L.P.*, 505 S.W.3d at 615.

Accordingly, we overrule Appellants' second issue in part and sustain it in part. We overrule Appellants' challenge to the legal sufficiency of the evidence but sustain Appellant's challenge to the factual sufficiency of the evidence.

In light of our holding that the evidence is factually insufficient to support the duration of the protective order based on the trial court's "serious bodily injury" finding, we need not address Appellants' third issue in which they challenge the

---

[2]Perhaps the trial court's protective order could have been properly extended beyond the general two-year period if the reason for the extension was based on a different provision in Section 85.025(a-1). Nevertheless, we note that the sole basis for the trial court's extension of this protective order's duration was its conclusion that Appellants conduct had caused "*serious bodily injury*" to A.V. and C.V. as that term is defined.

17

constitutionality of the lifetime protective order as it applied to them.  *See* TEX. R. APP. P. 47.1.

## IV. *This Court's Ruling*

We affirm the order of the trial court concerning its issuance of the family-violence protective order.  We reverse the order of the trial court as to the duration of the protective order and remand this cause to the trial court for further proceedings consistent with this opinion.


W. STACY TROTTER

JUSTICE


May 19, 2022

Panel consists of: Bailey, C.J., Trotter, J., and Williams, J.