

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00931-CV

**D.R.,**
Appellant

v.

**C.R.,**
Appellee

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-CI-19793
Honorable Christine Hortick, Judge Presiding

Opinion by:   Lori Massey Brissette, Justice

Sitting:       Lori I. Valenzuela, Justice
              Lori Massey Brissette, Justice
              H. Todd McCray, Justice

Delivered and Filed: August 13, 2025

AFFIRMED

This case involves whether there is sufficient evidence to support the entry of a final protective order for family violence. After reviewing the record and the briefs of the parties, we affirm.

**BACKGROUND**

D.R. and C.R.[1] were married on June 30, 2006. During the marriage they had four children together. They separated in 2015 and got back together, only to separate again in February of 2017. D.R. filed for divorce in April 2017. In October 2017, the parties entered agreed temporary orders appointing both parents as joint managing conservators, with C.R. having the exclusive right to designate the primary residence of the children. At that point, their stories diverge, with D.R. saying they continued in and out of the relationship for another year and C.R. saying they were never together after the divorce proceeding was filed.

To say the parents engaged in acrimony during the divorce proceedings is an understatement. There were multiple temporary orders focused on the custody, possession and access of the children. D.R. refused to return the children to C.R. in September 2021 and C.R. went almost seven months without seeing the three youngest. The following September also required a writ of habeas, ordering D.R. to again return the children to C.R. As a result, D.R. was limited to supervised visitations through Guardian House, which were ultimately suspended and then terminated due to his violations of Guardian House policies. Because of this and because D.R. continued to make numerous reports to law enforcement and CPS about C.R.'s care of the children, all of which were found to be without merit, D.R.'s possession and access were further restricted and he was ordered to submit to a psychological evaluation.

Finally, the divorce proceeding was set for final trial in November 2022, over five and a half years after the initial filing. Just before trial, C.R. filed for an application for ex parte protective order for her and the four children based on family violence. The trial court granted a temporary ex parte protective order that prohibited D.R. "from communicating in any manner with [C.R.

---

[1] To protect the identity of the couple and their minor children, we use aliases to refer to the parties. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8 cmt.

and/or the four children] except through Respondent's attorney," prohibited him from going to or near their residence, child-care facilities, schools, or extra-curricular activities, and prohibited him "from removing [the children] from the possession of C.R." For various reasons, including an injury suffered by D.R., over the next year, the temporary ex parte protective order was extended fifteen times. As a result, D.R. did not see the children for approximately a year before the matter was presented to the court for a final ruling.

After the trial of all issues, including the divorce and C.R.'s motion for protective order, the trial court found that family violence did occur between D.R. and C.R. and that family violence is likely to occur again in the future. The Final Protective Order entered by the trial court does not, however, name the children as protected parties and only prohibits D.R. from going near C.R., her residence or place of employment, from tracking or monitoring her property or vehicle, and from interfering with her use of her residence. The Order further makes clear that D.R. is entitled to the possession and access rights to the children granted to him in the Final Decree of Divorce and is permitted to attend school functions and extra-curricular events.

D.R. appeals the Final Protective Order, asserting the trial court erred in admitting unauthenticated photographs into evidence and entering a protective order under Texas Family Code Section 85.001 without the requisite sufficiency of evidence.

THE APPLICATION FOR EX PARTE PROTECTIVE ORDER

In her application for an ex parte protective order, in October of 2022, C.R. testified via affidavit that in May of 2018 D.R. punched her in the chest, causing her to fall backward. She further testified that in September 2020, D.R. refused to return the children to her after a visitation, requiring her to file a motion for enforcement and seek a writ of habeas and precluding her from seeing her children for almost a year. C.R. also testified that, since the inception of the divorce

proceeding, D.R. has called the police to her home at least fifteen times to do welfare checks and reported her to CPS several times, one time alleging she had drugs and weapons in her home. Finally, C.R. claimed that on December 2, 2021, she was shot at while driving in a vehicle with her new boyfriend. She testified, "Although I cannot prove it was D.R., there is no one else who despises me more than him to attempt to kill me."

## EVIDENCE PRESENTED AT TRIAL

On April 4, 2023, the parties appeared before the trial court for a final trial on the merits of the divorce proceeding as well as the motion for protective order. The trial was recessed and was not reconvened and concluded until September 1, 2023. The Final Protective Order was signed a little over three weeks later, on September 27, 2023. At trial, the trial court heard from the child custody evaluator appointed in the divorce proceeding, D.R., C.R., C.R.'s boyfriend, a school principal, and C.R.'s friend.

The child custody evaluator was originally appointed to conduct a child custody evaluation in March of 2019, submitted the first evaluation on August 31, 2020, and finished the second evaluation on November 14, 2022. She testified that she had concerns about D.R.'s excessive calls and texts to the children and about his failure to return the children to C.R. on time after visitation. She testified that Guardian House suspended his supervised visits because he violated policy by asking the children where C.R. was and who she was sleeping with and because he would whisper to the children so staff couldn't hear. She also stated that Guardian House reported seeing him with seven cell phones. She connected the phones with the fact that C.R. has been harassed from random phone numbers and blocked calls for years. The child custody evaluator said D.R. frequently talked negatively about C.R. to the children. She said his behavior has gotten worse over time, that he has "become more brazen" and "has become bolder in his actions." While her initial evaluation

had simply recommended that D.R.'s visitation not be extended, her final evaluation recommended that C.R. be appointed sole managing conservatorship and that D.R. have no visitation until he submits to a psychological evaluation.[2] In her final evaluation, she stated, "There has been domestic violence in this marriage which included physical, psychological, emotional, and economic abuse." She further expressed her concern of potential future physical violence by D.R. supported by his long history of violating court orders, not returning the children, disparaging C.R. to the children, and making false allegations to CPS and the police.

In D.R.'s testimony, he at first denied ever being arrested for family violence. But, when confronted with proof, he admitted that he had pleaded no contest to an assault involving C.R. in February 2020. He explained that he thought it had been expunged because he completed deferred adjudication. C.R. introduced court records from that conviction, which were admitted, showing that D.R. was charged with assaulting C.R., specifically kicking the front door, pushing his way into her apartment, and shoving her.

C.R. admitted in her testimony that she has not spoken directly to D.R. in almost four years, but that she finally moved for a protective order after she was shot at while driving with her boyfriend, an incident that occurred right after the children were returned to her in 2021—a return that only occurred after a capias issued for D.R. and a habeas issued for the children. She stated she could not describe the vehicle or the man who shot at her and that she has no evidence tying D.R. to the shooting, but believes he had something to do with it. C.R. also testified that, before they separated, D.R. hit her with a cell phone on the top of her arm, hit her with a leaf blower on her leg, and pinned her against a door frame because she was trying to call 911.

---

[2] D.R. was ordered to submit to a psychological evaluation prior to trial but had not done so at the time of trial.

C.R.'s boyfriend testified he has had to move twice because of D.R. calling the police to his home at least a dozen times for welfare checks, during which D.R. would sit in his car on the street outside watching. D.R. has also demanded that C.R.'s boyfriend's apartment manager provide D.R. with the boyfriend's apartment number and called the boyfriend's place of employment, resulting in reports by the boyfriend and his supervisor. C.R.'s friend testified that D.R. confronted her wanting to know where C.R. lived in early 2023 and, before the divorce was filed when the parties were already fighting over the children, he blocked C.R.'s friend's car with his own and attempted to open the passenger door to retrieve a child. Finally, a school principal testified that D.R. showed up to have lunch with one of the children despite a court order saying he could only have supervised visitation and that there was an altercation involving D.R. in the parking lot of the school, but no one was arrested.

### ADMISSION OF PHOTOGRAPHIC EVIDENCE

First, D.R. contends on appeal that the trial court erred by admitting unauthenticated photographs as evidence supporting C.R.'s claims of family violence, specifically pointing to the photographs of her arm and leg taken in 2017. At trial, D.R.'s counsel raised an objection when C.R.'s counsel's first attempt to introduce the photographs, after which the trial court told C.R.'s counsel to "fill in the gaps." She then attempted to authenticate the photographs again and D.R.'s counsel again objected that no time frame was given as to when the photographs were taken. C.R. then clarified that the photos were taken in 2017. D.R.'s counsel then asked who took the photos and C.R. answered that she had done so. Finally, D.R.'s counsel stated, "I mean, I don't have any way—I can ask questions about them when it's my time." With that, the trial court admitted the photographs without objection. Because D.R. abandoned his objection, he has not preserved the issue for review on appeal. TEX. R. APP. P. 33.1; *see, e.g. Lemos v. State*, 27 S.W.3d 42, 47 (Tex.

App.—San Antonio 2000 pet. ref'd) (counsel's comment "I withdraw my objection to that" waived complaint on appeal); *In re C.R.D.*, No. 12-20-00143-CV, 2021 WL 3779224, at *4 (Tex. App.—Tyler Aug. 25, 2021, no pet.) ("[A] complaint that is subsequently withdrawn is waived"); *Irvin v. Parker*, 139 S.W.3d 703, 707 (Tex. App.—Fort Worth 2004, no pet.) (concluding party waived complaint concerning admissibility of evidence because party withdrew objection and therefore did not obtain a ruling from trial court).

## SUFFICIENCY OF THE EVIDENCE

On the request of the nonapplicant, a protective order will be reversed on legal sufficiency grounds if the evidence supporting the order could not "enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Specifically, we look to the evidence to determine if "(1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact." *Id.* at 809. In conducting such a review, we must "credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* at 827. We may overturn the protective order on factual sufficiency grounds if, after considering and weighing the evidence, we find that the order is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). But, whether we are looking at the legal or the factual sufficiency of the evidence, we do not step into the shoes of the trial court, leaving the factfinder as the sole judge of the credibility of witnesses and the weight to be given their testimony. *Keller*, 168 S.W.3d at 819.

Prior to the amendments that took effect September 1, 2023, Texas Family Code Section 85.001 required the trial court enter a protective order if it finds that family violence has occurred and that family violence is likely to occur in the future.[3] But, pursuant to the amendment effective September 1, 2023, a trial court is now required only to find that family violence has occurred, with the second prong going to future likelihood of violence deleted. TEX. FAM. CODE § 85.001. Here, the temporary ex parte protective order and fourteen extensions of it were entered before September 1, 2023. And, the trial of the case began in April of 2023 and, after a long recess, concluded on September 1, 2023. But, the final protective order was not signed until September 27, 2023. The trial court, acting with the understanding that the law prior to September 1, 2023 applied, made specific findings that family violence had occurred and that it was likely to occur in the future. But, even so, appellee contends that our sufficiency review should only look to whether family violence occurred in the past, arguing that the 2023 amendments apply to this case.

Appellee cites us to a sister court decision: *M.W. v. M.W.*, No. 02-24-00048-CV, 2024 WL 3978058 (Tex. App.—Fort Worth 2024, no pet.). There, the Fort Worth Court of Appeals held that the amendment to Section 85.001 applied to protective orders rendered on or after the effective date, even if the application had been filed prior to that date. 2024 WL 3978058, at *1 (citing Act of May 24, 2023, 88th Leg., R.S., Ch. 688, §§ 8, 9, 2023 Tex. Sess. Law Serv. Ch. 688, §§ 8, 9 (H.B. 1432)). The court referred to language in H.B. 1432 that did not make it into the final statute, which simply says that the amendments are effective September 1, 2023. *Id.*; *see* TEX. FAM. CODE § 85.001. We have some concern about whether the new version of Section 85.001 would apply to a matter not only filed prior to the effective date but tried prior to the effective date. However,

---

[3] "Family violence" is defined as "an act by a member of a family. . . against another member of the family. . . that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself." TEX. FAM. CODE § 71.004(1).

because under either standard we find the evidence sufficient to support the trial court's entry of a protective order, we need not decide that issue.

First, here, the evidence establishes that family violence has occurred in the past between D.R. and C.R. In 2020, D.R. pleaded no contest to a charge of assault family violence arising out of an incident when he kicked the door of C.R.'s apartment, pushed his way in, and shoved her. C.R. also testified about other incidents that occurred where she was hit on the arm and leg and pinned against the wall while trying to call 911.[4]

As to whether there is a likelihood that family violence will occur in the future, there is evidence that D.R.'s behavior has escalated over the last several years, including violating court orders, disparaging C.R., making baseless allegations to Child Protective Services and law enforcement, and harassing C.R. and her boyfriend, somehow finding out where they live no matter where they moved. D.R. has continued to seek out her location, from the children, from her friend, even from C.R.'s boyfriend's apartment manager, despite court orders that he stay away from her. *See Body v. Palmore*, 425 S.W.3d 425, 532 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (recognizing one incident of past violence combined with continued harassments via text messaging was sufficient to support a finding of future likelihood); *see also Burt v. Francis*, 528 S.W.3d 549, 553 (Tex. App.—Eastland 2016, no pet.) ("Even in circumstances where no express threats are conveyed, the factfinder may nonetheless conclude that an individual was reasonably placed in fear."). Just as the child custody evaluator opined, it is reasonable to assume that behavior like that referenced here could escalate to physical threats, especially when combined with a history of family violence. *See Valenzuela v. Munoz*, No. 04-12-00660-CV, 2013 WL 4678682, at

---

[4] D.R. asserts that the evidence is insufficient because C.R. testified about different events at trial than were set forth in her affidavit supporting her application. But, that goes only to the credibility of the evidence, which is within the sole purview of the trial court and which we will not reconsider on appeal.

*4 (Tex. App.—San Antonio 2013, no pet.) (recognizing that "[o]ftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order").

## CONCLUSION

Because we find sufficient evidence to support the trial court's rendition of a protective order protecting C.R., we affirm.


Lori Massey Brissette, Justice